atherUNITED STATES DISTRICT COURT
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| Robert Bohner,<br><br>                              Plaintiff,<br><br>v.<br><br>Union Pacific Railroad Co.,<br><br>                              Defendant. | No. 4:19-cv-02581<br><br>**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

## INTRODUCTION

Plaintiff Robert Bohner was a loyal employee of Defendant Railroad Pacific Co. for more than twenty years. Then, after his physically demanding job wore down his arthritic hip, causing him to walk with a limp, Union Pacific cast him aside. Instead of planning for retirement, Bohner is now struggling to make ends meet.

Bohner's first claim is that Union Pacific removed him from service without the requisite cause, in violation of the Americans with Disabilities Act, 42 U.S.C § 12101 *et seq.* ("ADA"). Bohner's second claim is that Union Pacific made him submit to an examination for which it made him pay, also in violation of the ADA. Both claims should be decided by a jury.

About the first claim, Union Pacific argues that it is entitled to summary judgment because it reasonably relied on the results from a field test, which it says show that Bohner could not safely do his job. But the test showed only that Bohner limps, which is insufficient reason to remove him from service. And, in any event, there are jobs that Bohner can do that are not as physically demanding.

Regarding the second claim, Union Pacific addresses only whether it had the requisite cause necessary to ask Bohner to submit to an examination. That is not the issue. The issue is whether

1

Union Pacific required Bohner to pay for the examination, which it did.

Union Pacific's motion for summary judgment should be denied.

## LEGAL STANDARD

"The term 'summary judgment' is something of a misnomer." *Ray v. Union Pac. R.R. Co.*, 971 F. Supp. 2d 869, 875 (S.D. Iowa 2013). "It suggests a judicial process that is simple, abbreviated, and inexpensive, while in reality, the process is complicated, time-consuming, and expensive." *Id.* (quoting D. Brock Hornby, *Summary Judgment Without Illusions*, 13 Green Bag 2d 273, 281 (Spring 2010)) (internal quotation marks omitted). "The complexity of the process, however, reflects the complexity of law and life." *Id.* "Since the constitutional right to jury trial is at stake, judges must engage in a paper-intensive and often tedious process to assiduously avoid deciding disputed facts or inferences in a quest to determine whether a record contains genuine factual disputes that necessitate a trial." *Ray*, 971 F. Supp. 2d at 875 (quoting *Summary Judgment Without Illusions*, 13 Green Bag 2d at 281-82) (internal quotation marks omitted). "Despite the seeming inaptness of the name, and the desire for some in the plaintiffs' bar to be rid of it, the summary judgment process is well-accepted and appears here to stay." *Ray*, 971 F. Supp. 2d at 875 (quoting *Summary Judgment Without Illusions*, 13 Green Bag 2d at 281) (internal quotation marks omitted). "Indeed, judges are duty-bound to resolve legal disputes, no matter how close the call." *Ray*, 971 F. Supp. 2d at 875 (quoting *Summary Judgment Without Illusions*, 13 Green Bag 2d at 287) (internal quotation marks omitted).

Rule 56(a) of the Federal Rule of Civil Procedure provides that "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." "[S]ummary judgment is an extreme remedy, and one which is not to be granted unless the movant has established his right to a judgment with such clarity as to leave no room for controversy and that the other party is not entitled to recover under

any discernible circumstances." *Ray*, 971 F. Supp. 2d at 876 (quoting *Robert Johnson Grain Co. v. Chem. Interchange Co.*, 541 F.2d 207, 209 (8th Cir. 1976)) (internal quotation marks omitted). "The purpose of summary judgment is not to cut litigants off from their right of trial by jury if they really have issues to try." *Ray*, 971 F. Supp. 2d at 876 (quoting *Poller v. Columbia Broad. Sys., Inc.*, 368 U.S. 464, 467 (1962) (quoting *Sartor v. Ark. Natural Gas Corp.*, 321 U.S. 620, 627 (1944))) (internal quotation marks omitted). "Rather, it is designed to avoid useless, expensive and time-consuming trials where there is actually no genuine, factual issue remaining to be tried." *Ray*, 971 F. Supp. 2d at 876 (quoting *Anderson v. Viking Pump Div., Houdaille Indus., Inc.*, 545 F.2d 1127, 1129 (8th Cir. 1976)) (internal quotation marks omitted). "Summary judgment can be entered against a party if that party fails to make a showing sufficient to establish the existence of an element essential to its case, and on which that party will bear the burden of proof at trial." *Ray*, 971 F. Supp. 2d at 876.

"Federal Rule of Civil Procedure 56 mandates the entry of summary judgment upon motion after there has been adequate time for discovery." *Ray*, 971 F. Supp. 2d at 876. "Summary judgment is appropriately granted when the record, viewed in the light most favorable to the nonmoving party and giving that party the benefit of all reasonable inferences, shows that there is no genuine issue of material fact, and that the moving party is therefore entitled to judgment as a matter of law." *Id.* "The Court does not weigh the evidence, nor does it make credibility determinations." *Id.* "The Court only determines whether there are any disputed issues and, if so, whether those issues are both genuine and material." *Id.*

"In a summary judgment motion, the moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact based on the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any." *Ray*, 971 F. Supp. 2d at 876. "If the moving party has carried its burden, the nonmoving party must then go beyond its original

pleadings and designate specific facts showing that there remains a genuine issue of material fact that needs to be resolved by a trial." *Id.* "This additional showing can be by affidavits, depositions, answers to interrogatories, or the admissions on file." *Id.* "[T]he mere existence of **some** alleged factual dispute between the parties will not defeat a motion for summary judgment; the requirement is that  there be no **genuine** issue of **material** fact." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)) (emphasis in original) (internal quotation marks omitted). "An issue is 'genuine' if the evidence is sufficient to persuade a reasonable jury to return a verdict for the nonmoving party." *Ray*, 971 F. Supp. 2d at 876. "As to materiality, the substantive law will identify which facts are material . . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 876-77 (quoting *Anderson*, 477 U.S. 247-48) (omission in *Ray*) (internal quotation marks omitted). "[A] court must keep in mind that summary judgment is not a paper trial." *Ray*, 971 F. Supp. 2d at 876. "Therefore, a district court's role in deciding the motion is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe." *Id.* (quoting *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994)) (internal quotation marks omitted). "In a motion for summary judgment, the Court's job is only to decide, based on the evidentiary record that accompanies the moving and resistance filings of the parties, whether there really is any material dispute of fact that still requires a trial." *Ray*, 971 F. Supp. 2d at 876.

## ARGUMENT

Bohner's first claim is that Union Pacific removed him from service without the requisite cause. Bohner's second claim is that Union Pacific made him pay an examination it required him to undergo. A reasonable person could find for him on both claims.

### A) REMOVAL FROM SERVICE

When Bohner's new supervisor saw that Bohner was slowed by a limp, he removed Bohner from service pending a field test. Although the field test demonstrated only that Bohner walked with

a limp, which did not prevent him from doing his job, Union Pacific imposed restrictions against Bohner that prevent him from holding his position. To make matters worse, Union Pacific also prevented Bohner from holding other positions, which he could do even with the restrictions it imposed against him. A reasonable person could find for either or both reasons that Union Pacific violated the ADA.

Discrimination "is usually equated with something invidious." *Nall v. BNSF Ry. Co.*, 917 F.3d 335, 350 (5th Cir. 2019) (Costa, G., concurring). "But the reality is that employers lawfully discriminate all the time when making hiring and promotion decisions." *Id.* "So the question often is not whether discrimination is occurring, but whether it is the type of discrimination that society, through its laws, has condemned." *Id.*

"The [ADA] was a long overdue recognition that discrimination against the disabled belongs in the unlawful category." *Nall*, 917 F.3d at 350. "But Congress decided that not all disability discrimination should be unlawful." *Id.* "Because some disabilities may prevent some people from performing some jobs safely, the ADA provides a defense if the disabled employee will pose a safety threat . . . ." *Id.* (citing 42 U.S.C. § 12112(b)(6), 12113(b); 42 U.S.C. § 12111(8)).

"This 'direct threat' defense draws a line not between discrimination and its absence, but between unlawful and lawful discrimination." *Nall*, 917 F.3d at 350. The discrimination is lawful if "Union Pacific . . . prove[s] a significant risk of substantial harm to the health or safety of [Bohner] or other persons that cannot be eliminated by reasonable accommodation." *Hopman v. Union Pac. R.R.*, No. 4:18-cv-00074, 2020 U.S. Dist. LEXIS 175325, at *10 (E.D. Ark. Sep. 24, 2020). "Whether an employer has properly determined that a person poses a direct threat depends on the objective reasonableness of [the employer's] actions." *Nall*, 917 F.3d at 342 (quoting *Bragdon v. Abbott*, 524 U.S. 624, 650 (1998)) (internal quotation marks omitted) (alteration in *Nall*).

Union Pacific tries to convince the Court to apply the *McDonnell-Douglas* framework,

under which the burden is on Bohner to prove, *inter alia*, an inference of discrimination and pretext. (Def. Br. (Dkt. 30) at 3-13.) This is not a case, however, where an employer responded to an allegation of discrimination by identifying something other than the employee's protected status as the basis for its actions; rather, Union Pacific argues that its discrimination against Bohner is justified. (*Id.*) The *McDonnell-Douglas* framework is therefore inapplicable. *See*, *e.g.*, *Bates v. United Parcel Service, Inc.*, 511 F.3d 974, 988 (9th Cir. 2007) (noting that the use of burden shifting is unnecessary when it is undisputed that an employer made an employment decision on a proscribed basis); *Monette v. Electronic Data Systems Corp.*, 90 F.3d 1173, 1182 (6th Cir. 1996) *abrogated on other grounds by Lewis v. Humboldt Acquisition Corp., Inc.*, 681 F.3d 312 (6th Cir. 2012) ("The *McDonnell Douglas* burden shifting approach is unnecessary because the issue of the employer's intent, the issue for which *McDonnell Douglas* was designed, has been admitted by the defendant[.]")

The only element Bohner must actually prove that Union Pacific argues he cannot is that he is qualified to perform his job's essential functions. For the below discussed reasons, a reasonable person could find that Bohner can do his job. And even were that not the case, he could still prove that there are other positions he could do.

### 1) His Job

There is no evidence that Bohner has ever been unable to do his job. Union Pacific argues that he is nevertheless unqualified because a field test demonstrated that his limp could prevent him from safely doing it. At best for Union Pacific, there is a dispute of material fact regarding whether Bohner passed the test, which must be decided by a jury.

"Whether an individual is qualified within the meaning of the ADA is determined by applying a two-part test." *Henningsen v. City of Blue Earth*, 184 F. Supp. 3d 710, 720 (D. Minn. 2016) (quoting *Walz v. Ameriprise Fin., Inc.*, 779 F.3d 842, 845 (8th Cir. 2015)) (internal quotation

marks omitted). "The first inquiry is whether [Bohner] possess the requisite skills, education, certification or experience necessary for the job." *Henningsen*, 184 F. Supp. 3d at 720 (quoting *E.E.O.C. v. Wal-Mart Stores, Inc.*, 477 F.3d 561, 568-69 (8th Cir. 2007)) (internal quotation marks omitted). "The second part asks whether [Bohner] can, despite [his] impairments, perform the essential functions of the job either with or without reasonable accommodation." *Id.* (some alteration in *Henningsen*).

Union Pacific "focuses its argument on the second part of the test, asserting that [Bohner] is unqualified because his [arthritic hip] poses a direct threat to the health and safety of others, as well as himself." *Henningsen*, 184 F. Supp. 3d at 720 "An individual who cannot safely perform the essential functions of his job because it poses a direct threat to himself or others is not qualified." *Henningsen*, 184 F. Supp. 3d at 720. "The direct threat defense is an affirmative defense that the employer bears the burden of proving." *Henningsen*, 184 F. Supp. 3d at 720

"Whether an employer has properly determined that a person poses a direct threat depends on the objective reasonableness of [the employer's] actions." *Nall*, 917 F.3d at 342 (quoting *Bragdon*, 524 U.S. at 650 (1998)) (internal quotation marks omitted) (alteration in *Nall*). An employer demonstrates that its actions were objectively reasonable by showing that it performed "an individualized direct threat analysis that relies on the best current medical or other objective evidence . . . ." *Henningsen*, 184 F. Supp. 3d at 720 (quoting *Wal-Mart Stores*, 477 F.3d at 571-72) (citations omitted in *Henningsen*) (internal quotation marks omitted). Factors to consider include (1) the duration of risk, (2) the nature and severity of the potential harm, (3) the likelihood that the potential harm will occur, and (4) the imminence of the potential harm. *See, e.g.*, *Id.*

Here, Bohner long performed his job without incident despite his limp. (Pl. Resp. to Def. Prop. Facts and Pl. Prop. Facts (Dkt. 34) at Def. Prop. Fact No. 74.) Union Pacific has no evidence that his limp has ever prevented him from doing his job. (*Id.*) Indeed, the opposite is true, *e.g.*,

7

Bohner passed a functional capacity examination, which objectively measures whether an employee can do his or her job. (*Id.* at Def. Prop. Fact No. 52.)

Then, based on one short interaction, a supervisor who was new to the territory removed Bohner from service pending a field test, citing the speed with which Bohner walked as the reason from removing him from service (Pl. Resp. to Def. Prop. Facts and Pl. Prop. Facts at Def. Prop. Fact No. 74.) The field test was administered by two supervisors who lacked the knowledge, skill, experience, training, and/or education necessary to evaluate the extent to which an employee's disability-related limp affects his or her ability to perform his or her job's essential functions. (*Id.* at Def. Prop. Fact No. 146.) Relying solely on these supervisors' reports of, an associate medical director for Union Pacific then imposed certain restrictions on Bohner, which prevent him from holding his position. (*Id.* at Def. Prop. Fact Nos. 173, 184.)

The associate medical director did not follow best practices, which include seeking input from an employee's treating physicians; observing the field test, whether live or via video; relying on objective measurements and/or an employee's ability to meet objective goals instead of untrained managers' subjective impressions regarding the manner in which the employee tries to meet those goals; getting statements from all third parties who witnessed the field test; and if not examining the employee, at least talking with him or her. (Pl. Resp. to Def. Prop. Facts and Pl. Prop. Facts at Def. Prop. Fact Nos. 33, 39, 91, 93, 106-07, 134, 136, 151, 159, 163, 173; *id.* at Pl. Prop. Fact Nos. 9-12.) Had such practices been followed, the associate medical director would have learned that the supervisors' reports  are not only inaccurate but also based on nothing more than generalizations and stereotypes about Bohner's disability-caused limp. (*Id.*) For example, Bohner's union representative and the third-party witness who attended the field test have testified that Bohner passed the test. (*Id.*) As another example, Bohner met/passed each of the field test's objective goals/measures. (*Id.*)  For a final example, Bohner's treating physicians and retained

expert have testified that Bohner can safely do his job. (*Id.*) At best for Union Pacific, there is therefore a material dispute of fact regarding whether Bohner passed the field test. (*Id.*)

Union Pacific responds by trying to bolster its associate medical director's opinion with its retained expert's opinion. (Def. Br. at 5-7.) But its retained expert did not seek input from Bohner's treating physicians; observe the field test; rely on objective measurements and/or Bohner's ability to meet objective goals; get statements from any of the third parties who witnessed the field test; and/or talk with, much less examine, Bohner. (Pl. Resp. to Def. Prop. Facts and Pl. Prop. Facts at Def. Prop. Fact No. 176.) His opinion is therefore just as flawed as is the opinion of the associate medical director. (*Id.*)

Union Pacific then attacks the underpinnings of Bohner's treating physicians' opinions. (Def. Br. at 8-9.) "As a rule, questions regarding the factual underpinnings of the expert's opinion affect the weight and credibility of her testimony, not its admissibility." *Structural Polymer Grp., Ltd. v. Zoltek Corp.*, 543 F.3d 987, 997 (8th Cir. 2008). Because the Court's role on summary judgment is not to weigh opinions, Union Pacific's argument therefore does not support its motion. *See*, *e.g.*, *Ray*, 971 F. Supp. 2d at 876.

Plus, Bohner does not rely solely on his treating physicians' opinions. (Pl. Resp. to Def. Prop. Facts and Pl. Prop. Facts at Def. Prop. Fact Nos. 80, 133-34, 137-39, 141, 143, 145-47, 150, 153-55, 157, 161; *id.* at Pl. Prop. Fact Nos. 9-12.) He also relies on his history of having done the job, his coworker's opinions, his union representative's opinion, the opinion of the third party who attended the field test, and the opinion of his retained expert. (*Id.*) To the extent his treating physicians' opinions are flawed, such evidence cures them. (*Id.*)

Next, Union Pacific argues that even if there is a dispute of material fact regarding whether its associate medical director's opinion is correct, it acted on a good faith belief about Bohner's ability to do his job based on such opinion, which it says entitles it to summary judgment. (Def.

Br. at 9-12.) As discussed *supra* at 5-7, what matters is whether an employer's actions were objectively reasonable, which requires that Union Pacific prove that it performed "an individualized direct threat analysis that relies on the best current medical or other objective evidence in . . . ." *Henningsen*, 184 F. Supp. 3d at 720 (quoting *Wal-Mart Stores*, 477 F.3d at 571-72)) (citations omitted in *Henningsen*) (internal quotation marks omitted). Union Pacific's good faith belief about whatever is therefore irrelevant.

"Even if it is true that [Union Pacific] could choose to credit the opinions of its own doctors over [Bohner's doctors], the evidence identified by [Bohner] puts into question the objective reasonableness of those opinions." *Nall*, 917 F.3d at 345. "It is not a district court's function on summary judgment to resolve an issue of fact based on conflicting expert testimony." *Montgomery v. Union Pac. R.R. Co.*, No. 17-cv-00201, 2018 U.S. Dist. LEXIS 198593, *17-18 (D. Ariz. Nov. 21, 2018) (quoting *Scharf v. U.S. Attorney Gen.*, 597 F.2d 1240, 1243 (9th Cir. 1979)); *see also Thomas v. Newton Int'l Enters.*, 42 F.3d 1266, 1270 (9th Cir. 1994) ("Expert opinion evidence is itself sufficient to create a genuine issue of disputed fact sufficient to defeat a summary judgment motion.")

The case on which Union Pacific relies—*Owen v. Union Pac. R.R. Co.*, No. 8:19-cv-462, 2020 U.S. Dist. LEXIS 211209 (D. Neb. Nov. 12, 2020)—does not command a different result. The plaintiff in that case challenged only whether Union Pacific had the requisite cause to subject him to a field test; whereas, Bohner challenges whether Union Pacific had the right to remove him from service based on the results from a fundamentally flawed field test. Those are distinctly different issues.

This case is more akin to *Montgomery*, 2018 U.S. Dist. LEXIS 198593, in which the court denied Union Pacific's motion for summary judgment, finding that the plaintiff had raised a material issue of fact as to whether Union Pacific's decision was based on a reasonable medical

judgment that relies on the most current medical knowledge and/or the best available objective

evidence:

> To start, it is not clear from the record that [Union Pacific's medical director] relied on the most current medical knowledge at the time of Defendant's employment decision. During his deposition, he first cited a meta-analysis that was completed in 2017 and thus could not have been a factor in his decision. [Union Pacific's medical director] did generally reference "look[ing] at [articles] in the past," which placed the risk of rupture "from one to three percent." However, [Union Pacific's medical director] was unable to provide any details when pressed for information about those articles, so it is unclear whether they also post-date Defendant's employment decision. [Union Pacific's medical director] also indicated that he did not look for the other articles because the meta-analysis is "more applicable in this case," which raises questions as to the appropriateness of his reliance on the other articles at the time of Defendant's employment decision.
>
> Furthermore, it is not clear that Defendant took into consideration that Plaintiff performed substantially similar work at BNSF for almost a year without medical incident. "[T]his Circuit has cautioned that individualized risk assessment also requires consideration of relevant information about an employee's past work history." *Echazabal*, 336 F.3d at 1032 (explaining that a reasonable jury could find that 20 years of experience without incident was proof the plaintiff was not a direct threat), *citing with approval Anderson v. Little League Baseball, Inc.*, 794 F. Supp. 342, 345 (D. Ariz. 1992) (rejecting direct threat defense and giving "great weight" to the plaintiff's three years of experience without incident). Dr. Charbonneau believes he was unaware of Plaintiff's work history, and [Union Pacific's medical director] does not recall whether or not he was aware. Thus, it is not clear that Defendant gave Plaintiff's circumstances full and proper consideration. Although Plaintiff's injury-free work history is shorter than that of the plaintiffs in *Echazabal* and *Little League Baseball*, a reasonable jury could still rely on it to reject Defendant's direct threat defense.

*Id.*, at *21-23 (citation to the record omitted).

The *Montgomery* court is not alone in rejecting the arguments Union Pacific makes in this

case. It is joined by, *inter alia*, the courts in *Campbell v. Union Pac. R.R. Co.*, No. 4:18-cv-00522,

2020 U.S. Dist. LEXIS 162638 (D. Idaho Sep. 4, 2020); *West v. Union Pac. R.R. Co.*, No. 4:18-cv-

3340, 2020 U.S. Dist. LEXIS 50510 (S.D. Tex. Mar. 24, 2020); *Robson v. Union Pac. R.R. Co.*, No.

4:17-cv-00416, 2019 U.S. Dist. LEXIS 218568, at *1 (D. Idaho Dec. 13, 2019); *Martin v. Union

Pac. R.R. Co.*, No. 16-cv-2821, 2018 U.S. Dist. LEXIS 94310 (D. Colo. June 5, 2018). Their

reasoning is sound, applies with equal force to this case's facts, and should be adopted by this Court.

As a last-ditch effort to obtain summary judgment, albeit in a footnote, Union Pacific argues that it is entitled to summary judgment regardless of the extent to which its reasoning is flawed because Bohner applied for disability benefits. (Def. Br. at 7 n.3.) The case on which Union Pacific relies—*Magnussen v. Casey's Marketing Co.,* 787 F.Supp.2d 929 (N.D. Iowa, 2011)—regards an employee applying for social-security benefits, which are fundamentally different than the benefits for which Bohner applied. (Pl. Resp. to Def. Prop. Facts and Pl. Prop. Facts at Def. Prop. Fact Nos. 189-90.) **Bohner applied for benefits only for occupational disability, which means that he did not claim to be totally disabled.** (*Id.*)

Furthermore, Bohner explained in his application that he was applying for the benefits only because the railroad would not allow him to work. (Pl. Resp. to Def. Prop. Facts and Pl. Prop. Facts at Def. Prop. Fact No. 189-90.) The forgoing is **important because** an employee applying for benefits does not, in and of itself, estop him or her from claiming that he or she is a qualified individual within the ADA's meaning. *Self v. BNSF Ry. Co.*, No. 14-cv-618, 2016 U.S. Dist. LEXIS 15500, at *21-26 (W.D. Tex. Feb. 8, 2016). An employee is precluded only if the factual descriptions supporting disability in his or her benefits application preclude the possibility of qualification as of a certain date, which is not the case her. *Id.*

### 2) A Foreman Job

The above having been said, the Court need not determine whether Union Pacific should have imposed restrictions on Bohner to find that Union Pacific is not entitled to summary judgment. There is no evidence that Union Pacific performed an individualized analysis of whether the restrictions prevent Bohner from holding every position on which he can bid. Had it done what the

law requires, Union Pacific would have learned that there are jobs Bohner can hold without violating the restrictions it imposed on him.

In a case where a plaintiff-employee alleged Union Pacific's negligence caused him to suffer a disabling injury, which meant Union Pacific was potentially on the hook for his wage loss, the manager who decided that Bohner cannot hold any position in the signal department testified that foreman don not really do any physical work and that they instead just supervise the employees with whom they are working. (Pl. Resp. to Def. Prop. Facts and Pl. Prop. Facts at Pl. Prop. Fact No. 18.) Bohner had the seniority to bid on and hold such position, which would apparently not violate his restrictions. (*Id.* at Def. Prop. Fact No. 17.) Union Pacific, however, has prevented Bohner from holding even this position. (*Id.* at Def. Prop. Fact No. 19.)

Bohner anticipates that Union Pacific may try to sidestep these inconvenient facts by inviting the Court to analyze them as a request for an accommodation. Bohner is not, however, criticizing Union Pacific for not accommodating his restrictions; rather, he is challenging Union Pacific's refusal to allow him to return work to any position within the signal department as overbroad.

While the parties dispute whether restrictions should have been imposed on Bohner, it is undisputed that he could have held a foreman position without violating them. There is no reason Bohner has not been allowed to hold this position. At best for Union Pacific, its refusal to allow Bohner to return to work is overbroad, in violation of the ADA.

## B) UNLAWFUL-MEDICAL INQUIRY

Bohner's second claim is that Union Pacific subjected him to an unlawful-medical inquiry. Union Pacific argues that it is entitled to summary judgment on this claim because it had the requisite cause necessary to obtain Bohner's medical records. (Def. Br. at 13-15.) Bohner's claim, however, does not regard whether Union Pacific had a right to obtain his medical records. Instead, it

13

concerns Union Pacific forcing him to pay for an examination it required him to undergo.

The ADA prohibits discrimination "in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Requiring employees to pay for medical examinations because they are disabled is a discriminatorily imposed condition of employment. *See*, *e.g.*, *EEOC v. BNSF Ry. Co.*, 902 F.3d 916, 925 (9th Cir. 2018). This is especially true when one considers the high cost of medical examinations, from which it follows that requiring examinations as a condition will mean termination for many employees. *Id.*

Here, Union Pacific admits that it ordered Bohner to submit to an Exercise Tolerance Test. (Pl. Resp. to Def. Prop. Facts and Pl. Prop. Facts at Def. Prop. Fact No. 115.) Union Pacific also admits that Bohner submitted to the examination. (*Id.*) Finally, it is undisputed that Union Pacific made Bohner pay for the examination. (*Id.*)

The ADA prohibits employers from subjecting employees to examinations for which it makes them pay. It is undisputed that Union Pacific subjected Bohner to an examination for which it made him pay. Union Pacific is therefore not entitled to summary judgment on Bohner's unlawful-inquiry claim.

## CONCLUSION

A reasonable person not only could but also would find that Union Pacific made him pay for one of the examinations it required him to undergo. A reasonable person could also find that Union Pacific has removed and withheld him from service without the requisite cause. Union Pacific's motion for summary judgment should be denied.

Dated: December 8, 2020

                             **THE MOODY LAW FIRM**

                            /s/ *Nicholas D. Thompson*
                            Nicholas D. Thompson

*(admitted Pro Hac Vice)*
nthompson@moodyrrlaw.com
500 Crawford Street, Suite 200
Portsmouth, VA 23704
(757) 673-9161 Work
(757) 477-0991 Cell
(757) 397-7257 Fax

**GROVES POWERS, LLC**
/s/ Steven L. Groves
Steven L. Groves
One US Bank Plaza
505 N. 7th Street, Suite 2010
St. Louis, MO 63101
(314) 696-2300
(314) 696-2304- Fax
sgroves@grovespowers.com

**ATTORNEYS FOR PLAINTIFF**

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that, on the 8th day of December, 2020, the foregoing was

filed with the CM/ECF system, which served an electronic copy on all counsel of record.

*/s/ Nicholas D. Thompson*