UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ROBERT BOHNER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:19-cv-02581-SEP |
| | ) |
| UNION PACIFIC RAILROAD CO., | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

Before the Court is Defendant's Motion for Summary Judgment.  Doc. [28].  The Motion is fully briefed.  For the reasons set forth below, the Motion will be granted.

**FACTS AND BACKGROUND**[1]

Defendant Union Pacific Railroad Company is an interstate Class I freight railroad company employing more than 35,000 employees, including Plaintiff Robert Bohner.  Bohner suffers from degenerative osteoarthritis in his left hip, which was diagnosed in May 2018.[2]  Doc. [34] ¶ 4.  His physician, Dr. Allison Heider, told Bohner he had "very, very bad arthritis in his left hip—bone on bone." *Id*. ¶ 5.  Osteoarthritis is a progressive condition that can cause functional limitations and disability, including decreased strength and limitations in ranges of motion. *Id.* ¶ 6.  Although Bohner's osteoarthritis was not diagnosed until 2018, Bohner's own expert, Dr. Kevin Tangle, concedes that "it was clear that [Bohner] had some arthritis for several years before," and by May 2018, there were "some advanced degenerative changes." *Id.* ¶ 7.

Union Pacific hired Bohner as an Assistant Signalman on July 18, 1994. *Id.* ¶ 3.  In February 2015, he became a Skilled Signalman, which is a "safety-sensitive" position.  That means Bohner was expected to "perform his job in [] a manner that assured the safety of himself,

---

[1] The facts herein are either uncontested, or, if contested, construed in the light most favorable to Bohner. *See Munz v. Michael*, 28 F.3d 795, 796 (8th Cir. 1994).

[2] The Complaint also claims Lyme disease as a basis for his disability discrimination claim.  Bohner has fully recovered from his 2016 Lyme disease diagnosis and does not consider himself to be disabled due to Lyme disease.  Doc [34] ¶ 199.  Thus, the Court does not consider Lyme disease in its evaluation of Plaintiff's claims.

1

his coworkers, and the public." *Id.* ¶¶ 10-12.  The parties do not dispute the essential job functions of a Skilled Signalman, which include—among other duties—installation of various items, troubleshooting, and "being able to perform various physical activities such as . . . making quick and accurate movements and bending, stooping, and kneeling." *Id.* ¶ 11.[3]  Bohner worked in a signal gang, which typically consists of four employees and a foreman, all of whom report to a supervisor who oversees multiple gangs in a particular region.  *Id.* ¶¶ 15-17.

In December 2015, Bohner's supervisor expressed concerns to Manager of Signal Projects Victor Castillo that Bohner was "struggling to physically perform certain tasks."  Doc. [34] ¶ 25.  This prompted Castillo to refer Bohner to Union Pacific's Health and Medical Services Department (HMS) for a fitness-for-duty (FFD) evaluation, reporting that Bohner "appeared to be having difficulty climbing and lifting."  *Id.* ¶¶ 25-27, 45.  An FFD evaluation is a medical evaluation undergone to determine if an employee has a health condition or functional impairment that poses a significant safety risk or prevents performance of essential job functions.  *Id.* ¶ 21.  It focuses on safety risks specific to the railroad work environment and involves a review of the employee's medical records and conditions.  *Id.* ¶ 22.  After reviewing the medical records and supervisor's reports compiled for Bohner's FFD, Dr. Donald Lewis, an Associate Medical Director for Union Pacific asked that Bohner undergo a comprehensive occupational medicine evaluation, which Bohner did, in addition to a functional capacity exam (FCE).  *Id.*

---

[3] It is undisputed that Bohner's essential job functions as a Skilled Signalman included:

> installing various railroad signals and grade-crossing protecting equipment that affect train movement for Union Pacific and the general public, including installing foundations, gates, signals, signal-crossing warning devices, and lights; troubleshooting malfunctions with signal equipment and systems, and making necessary adjustments; maintaining and repairing signal communication circuitry, systems, and components by, for example, aligning, adjusting and calibrating signal communication equipment; loading and unloading supplies and heavy equipment from trucks; digging ditches and trenches for cable and foundations for the signals; climbing and troubleshooting signal structures, including signal bridges up to 20-30 feet high; handling cable and installing it underground; setting up signal cabins holding electrical equipment; practicing safe work habits by following Union Pacific and Federal safety rules, practices, and procedures, and ensuring one's equipment and work area are in safe operating condition; and being able to perform various physical activities such as, for example, making quick and accurate movements and bending, stooping, and kneeling through the day.

Doc. [34] ¶ 11.

¶¶ 45, 47.  Based on those evaluations, Union Pacific determined that Bohner was fit for duty, and he returned to work on January 15, 2016.  Doc. [34] ¶ 52.

After Bohner returned to work, Castillo continued hearing concerns about Bohner's ability to safely perform his duties, including from three different supervisors.  One supervisor reported Bohner twice leaned on a signal junction box while wiring it, in violation of the safety standards, which made him question Bohner's ability to "safely navigate uneven terrain, ballasts, open ditches and various other obstacles that could be present in the field while Signalmen are working . . . ." *Id.* ¶¶ 61-64.  Another supervisor, who worked with Bohner twice, reported that Bohner lay on his stomach while working on junction boxes and had difficulty walking and "getting up and down off of the boom truck." *Id.* ¶¶ 67-68, 71.  Bohner's most recent supervisor, Dillon Bannan, reported on May 22, 2018, that Bohner was "having difficulty with balance and walking," and he once saw Bohner "grab onto a signal cantilever to avoid losing balance." *Id.* ¶ 74.  Bannan also reported Bohner was having "an extremely tough time walking, stepping, and climbing." Doc. [29-10] ¶ 17; *id.* at 19.  Bannan expressed these concerns to Castillo on May 23, 2018, unaware of Bohner's previous FFD evaluation.  Doc. [34] ¶¶ 83-84.

In response to these concerns, Castillo referred Bohner for his second FFD evaluation. *Id.* ¶ 86.  The FFD nurse informed Dr. Lewis of the new referral, explaining that Bohner's supervisors observed him having "difficulty climbing, an unsteady walk, and deteriorating performance in the field." *Id.* ¶ 88.  In gathering Bohner's updated medical records, Dr. Lewis received a letter from Dr. Heider's office stating that she had evaluated Bohner for leg and hip pain a week prior and found him fit for duty without restrictions. *Id.* ¶ 90.  Dr. Heider was not aware of Bohner's job requirements or the essential functions of a Skilled Signalman; her opinion that he was fit for duty was based on Bohner's self-assessment and representations. *Id.* ¶¶ 100-01. Given the lack of details obtained from Bohner's updated medical records, Dr. Lewis asked Castillo to complete a Supervisor Initiated FFD Request Form so HMS could obtain more detailed information about his supervisors' concerns. *Id.* ¶ 102.

On June 5, 2019, Bohner was seen by Dr. Edwin Roeder for a Medical Progress Report, as requested by Dr. Heider during his May appointment. *See id.* ¶¶ 90, 105.  Dr. Roeder reported that Bohner had osteoarthritis in his left hip but released him to return to work without limitations. *Id.* ¶ 105.  Like Dr. Heider, Dr. Roeder did not review Bohner's job requirements or

3

essential job functions before clearing him to work.  *Id.* ¶ 109.  Union Pacific received no additional medical records.

Because the concerns prompting both FFD evaluations were similar and Bohner had been diagnosed with osteoarthritis, Dr. Lewis ordered a Functional Field Evaluation (FFE) to assess Bohner's ability to perform the essential functions of a Skilled Signalman.  Doc. [34] ¶ 114.  To ensure he could safely participate in the FFE, Bohner was required to undergo an Exercise Tolerance Test, which he passed.  *Id.* ¶¶ 115-17.

Castillo selected two managers who were unaffiliated with Bohner's FFD referral to conduct his FFE—Assistant Manager of Signal Projects William Ritter and Assistant Manager of Track Maintenance Tyson Fore.  *Id.* ¶¶ 118-24.  The tasks in the FFE were designed to mirror the essential job functions of a Skilled Signalman, although Bohner contends that they did not.  *See* Docs. [34] ¶ 128; [34-2] ¶ 15.  Signal Maintainer Tyler Akey and Local Union Chairman Aaron Carter were also present at the FFE.  Doc. [34] ¶ 129.  Bohner was given nine tasks to complete, and for each one, Ritter and Fore indicated whether his performance was satisfactory.  Their report marked four of the nine tasks as "unsatisfactory."  *Id.* ¶¶ 137-40, 157-58, 161-62 ("Ability to Practice Safe Work Habits"); ¶¶ 141-44, 152-56, 161-62, 166 ("Ability to Bend, Stoop, & Kneel Frequently"); 145-48 ("Ability to Troubleshoot Malfunctions" and "Ability to Maintain and Repair Signal Circuitry, Systems, and Components").  While Akey and Carter, the other two witnesses to Bohner's FFE, did not agree with Ritter and Fore's assessment, it is undisputed that Ritter and Fore's FFE evaluation reported to Union Pacific that Bohner failed to perform four of the nine tasks satisfactorily.  *See id.*; Docs. [34-1] (Akey's declaration); [34-3] (Carter's declaration).

After speaking with Ritter and Fore and reviewing Bohner's FFE results, Dr. Lewis determined that Bohner was restricted from kneeling and squatting and could not perform his essential job functions as a Skilled Signalman.  *See id.* ¶¶ 173, 175.  Because of his medical restrictions, Bohner was not released to return to work as a Skilled Signalman, but Dr. Lewis's memorandum did provide that the restrictions could be reassessed if Bohner provided medical evidence that his condition had substantially changed.  *Id.* ¶ 175.  On September 5, 2018, Bohner submitted an application to the U.S. Railroad Retirement Board for disability benefits, citing

4

management's observation that he had limited ability to kneel and stoop.[4]  *Id.* ¶¶ 188-89; Doc. [29-9] at 2.  On September 16, 2019, Bohner filed the Complaint in this case, alleging discrimination under the ADA on the basis of his disability—i.e., arthritis.  Doc. [1] ¶¶ 9, 10.  His Complaint includes three counts:

   **Count I**:   Disability Discrimination
   **Count II**:   Failure to Accommodate
   **Count III**:   Impermissible Medical Exam

*Id.* at 3-5.  On October 8, 2018, Union Pacific filed a Motion to Dismiss, Doc. [5], which the Court granted as to only Count II on September 14, 2020, Doc. [25].  On November 17, 2020, Union Pacific filed a Motion for Summary Judgment, Doc. [28], and a Motion to Exclude Portions of Testimony by Plaintiff's Expert Witness, Doc. [31].

## LEGAL STANDARD

Union Pacific moves for summary judgment on both remaining counts.  Under Federal Rule of Civil Procedure 56, a court must grant a motion for summary judgment if it finds that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "A genuine issue of material fact exists if a reasonable jury could return a verdict for" the non-movant.  *Cockram v. Genesco, Inc.*, 680 F.3d 1046, 1051 (8th Cir. 2012) (quoting *Clark v. Matthews Int'l Corp.*, 639 F.3d 391, 397 (8th Cir. 2011)).  "As a general rule, summary judgment is proper 'only after the nonmovant has had adequate time for discovery.'"  *Hamilton v. Bangs, McCullen, Butler, Foye & Simmons, L.L.P.*, 687 F.3d 1045, 1049 (8th Cir. 2012) (quoting *Iverson v. Johnson Gas Appliance Co.*, 172 F.3d 524, 530 (8th Cir. 1999)).

The moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex*, 477 U.S. at 323 (internal quotations marks omitted).  The burden then shifts to the non-movant to "present specific evidence, beyond 'mere denials or allegations [that] . . . raise a genuine issue for trial.'"  *Farver*

---

[4] His application stated: "supervisor pulled me from service based on his observation that I was walking slow around the job site.  Subsequent observations by managers states that they believed that I had limited ability to kneel and stoop while accomplishing task."  Doc. [29-9] at 2.

*v. McCarthy*, 931 F.3d 808, 811 (8th Cir. 2019) (quoting *Wingate v. Gage Cnty. Sch. Dist.*, F.3d 1074, 1079 (8th Cir. 2008)).  The court may not "weigh the evidence in the summary judgment record, decide credibility questions, or determine the truth of any factual issue." *Kampouris v. St. Louis Symphony Soc'y*, 210 F.3d 845, 847 (8th Cir. 2000) (Bennett, C.D.J., dissenting).  The court instead "perform[s] only a gatekeeper function of determining whether there is evidence in the summary judgment record generating a genuine issue of material fact for trial on each essential element of a claim." *Id.*

## DISCUSSION

### I. Disability Discrimination

The ADA prohibits "discrimination against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions and privileges of employment."  42 U.S.C. § 12112(a).  A "qualified individual" is one "who, with or without reasonable accommodation, can perform the essential functions of" the job.  *Id.* § 12111(8). Union Pacific moves for summary judgment as to Count I on the grounds that Bohner cannot prove 1) he was a "qualified individual," *see id.* § 12112(a), and 2) that Union Pacific acted with discriminatory intent.  Doc. [30] at 2.

A plaintiff can "establish[] a disability discrimination claim either by offering direct evidence of discrimination or by creating an inference of discrimination under the *McDonnell Douglas* burden-shifting framework." *Jackson v. Union Pac. R.R. Co.*, No. 4:19-cv-00069-RGE-RAW, 2021 WL 1726895, at *11 (S.D. Iowa Mar. 29, 2021) (citing *Oehmke v. Medtronic, Inc.*, 844 F.3d 748, 755 (8th Cir. 2016)); *see Thompson v. Bi-State Dev. Agency*, 463 F.3d 821, 824-25 (8th Cir. 2006).  "Direct evidence is evidence that establishes a 'specific link between the [alleged] discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the employer's decision.'" *Twymon v. Wells Fargo & Co.*, 462 F.3d 925, 933 (8th Cir. 2006) (quoting *Putman v. Unity Health Sys.*, 348 F.3d 732, 735 (8th Cir. 2003)).  Direct "refers to the causal strength of the proof, not whether it is 'circumstantial' evidence." *St. Martin v. City of St. Paul*, 680 F.3d 1027, 2033 (8th Cir. 2012) (quoting *Griffith v. City of Des Moines*, 387 F.3d 733, 736 (8th Cir. 2004)). If the plaintiff does not have evidence "clearly point[ing] to the presence of an illegal motive," his claim must be analyzed under the indirect evidence standard. *Id.* (quoting *Griffith*, 387 F.3d

at 736) (finding that oral and written statements indicating the plaintiff was not promoted because, in part, of his knee injury was not direct evidence of discrimination); *see, e.g.*, *Oemke*, 844 at 755 (holding that evidence the manager did not believe plaintiff had cancer, despite medical records proving it, was not direct evidence of discrimination).

When there is no direct evidence, a plaintiff must introduce indirect evidence of discrimination using the *McDonnell Douglas* framework. *Id.* (citing *McDonnell Douglas v. Green*, 411 U.S. 792 (1973)). Bohner asserts that the *McDonnell Douglas* standard is "inapplicable" because Union Pacific has admitted discriminatory intent, so the burden shifting is unnecessary. Doc. [35] at 6. Rather than "identifying something other than [his] protected status as the basis for its actions," Bohner argues, Union Pacific defends by simply stating that "its discrimination against Bohner is justified." *Id.*[5] Union Pacific responds that it never admitted it discriminated against Bohner nor that it would be "justified" in doing so. Doc. [39] at 4. The Court agrees. Union Pacific consistently identified a reason for its actions other than Bohner's protected status—namely, Bohner's inability to safely perform the essential job functions of a Skilled Signalman. *See, e.g.*, Docs. [30] at 2, 5, 6-7; [34] ¶¶ 181-84.

Bohner provides no other direct evidence of discrimination. Moreover, in asserting that *McDonnell Douglas* is inapplicable, Bohner relies on authorities that are neither binding nor supportive of his assertion.[6] *See* Doc. [35] at 5-6. In truth, this kind of case is routinely analyzed under *McDonnell Douglas*, and Bohner offers no persuasive authority suggesting otherwise. *See, e.g.*, *Higgins v. Union Pac. R.R. Co.*, 931 F.3d 664, 668-70 (8th Cir. 2019) (applying *McDonnell Douglas* when plaintiff was not permitted to return to work after being issued medical restrictions during the FFD evaluation); *Owen v. Union Pac. R.R. Co.*, 8:19CV462, 2020 WL 6684504, at *1 (D. Neb. Nov. 12, 2020) (applying *McDonnell Douglas* when the plaintiff suffering from arthritis was issued an FFD evaluation after supervisor saw him stumble at jobsite). Because Bohner cannot point the Court to any evidence of direct

---

[5] In support of this consequential claim, Bohner cites 11 pages of Union Pacific's Memorandum in Support but does not identify any specific passage or argument. *Id.* (citing Doc. [30] at 3-13)

[6] Bohner also includes various nonbinding authorities discussing the "direct threat" defense, appearing to argue this defense precludes analysis under *McDonnell Douglas*. Doc. [35] at 5. But Union Pacific never asserts the direct threat defense, and even if it did, it would not preclude evaluation under *McDonnell Douglas*. See Doc. [39] at 3-4; *see generally* Doc. [29]; *see Krehbiel v. Union Pac. R.R. Co.*, No. 19-2002-JAR, 2020 WL 5503363, at *8-9 (D. Kan. Sept. 11, 2020) (applying *McDonnell Douglas* in action where the defendants assert a direct threat defense); *Jackson*, 2021 WL 1726895, at *15.

discrimination, the Court will apply the *McDonnell Douglas* burden-shifting framework in evaluating the disability discrimination claim.

Under the *McDonnell Douglas* burden-shifting framework, Bohner must first establish a prima facie case of disability discrimination. *McDonnell Douglas*, 411 U.S. at 802. To establish a prima facie case of discrimination, he must show that "(1) he is a disabled person as defined by the ADA, (2) he is qualified to perform the essential functions of his job with or without reasonable accommodation, and (3) he suffered an adverse employment action because of his disability." *Higgins*, 931 F.3d at 669 (quoting *Cody v. Prairie Ethanol LLC*, 763 F.3d 992, 996 (8th Cir. 2014)). If successful in establishing the prima facie case, the burden of production shifts to Union Pacific to "articulate some legitimate, nondiscriminatory reason" for the adverse action. *McDonnell Douglas*, 411 U.S. at 802. If Union Pacific meets its burden, the burden shifts back to Bohner to show Union Pacific's stated reasons are pretext for unlawful discrimination. *Oehmke*, 844 F.3d at 755. "Although intermediate evidentiary burdens shift back and forth[,] . . . the ultimate burden of persuading the trier of fact that defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Dammen v. UniMed Med. Ctr.*, 236 F.3d 978, 980 (8th Cir. 2001) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000)).

When a defendant offers a legitimate, non-discriminatory reasons for its actions, the Court need not determine if the plaintiff established a prima facie case. *See Brady v. Off. of Sergeant at Arms*, 520 F.3d 490, 493-94 (D.C. Cir. 2008) ("[O]nce the employer asserts a legitimate, non-discriminatory reason, the question whether the employee actually made out a prima facie case is 'no longer relevant' and thus 'disappear[s]' and 'drops out of the picture.'" (quoting *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 510, 511 (1993)); *see Reeves*, 530 U.S. at 143 (holding that "the presumption of discrimination 'drops out of the picture' once the defendant meets its burden of production, [but] the trier of fact may still consider the evidence establishing the plaintiff's prima face case" in deciding the issue of pretext (citation omitted)). This is just such a case. Union Pacific submits that it ordered the FFD evaluation because of concerns expressed to Castillo by at least three different supervisors. *See* Doc. [34] ¶¶ 61-74. The company removed Bohner from service after Dr. Lewis determined, based upon the FFE report, that Bohner could not perform the essential functions of a Skilled Signalman. *See id.* ¶¶ 173-75.

Union Pacific's burden here is one of production, not proof. *See Kratzer v. Rockwell Collins, Inc.*, 398 F.3d 1040, 1046 (8th Cir. 2005) ("The defendant need not persuade the court, it must simply provide evidence sufficient to sustain a judgment in its favor." (quoting *Krenik v. Cnty. of Le Sueur*, 47 F.3d 953, 958 (8th Cir. 1995))). "The burden to articulate a nondiscriminatory justification is not onerous, and the explanation need not be demonstrated by a preponderance of the evidence." *Floyd v. Mo. Dept. of Soc. Servs., Div. of Fam. Servs.*, 188 F.3d 932, 936 (8th Cir. 1999). Union Pacific's articulation of legitimate, non-discriminatory reasons is sufficient to meet its burden, thereby returning the burden to Bohner to show that Union Pacific's reasons were pretext for unlawful discrimination.

The Eighth Circuit explains that to show pretext, a plaintiff must present evidence demonstrating the employer's non-discriminatory reason was "false" and "discrimination was the real reason" for its actions. *McNary v. Schreiber Foods, Inc.*, 535 F.3d 765, 769 (8th Cir. 2008) (quoting *Wilking v. Cnty of Ramsey*, 153 F.3d 869, 874 (8th Cir. 1998)). The plaintiff must offer evidence that "a discriminatory animus lies behind the defendant's neutral explanations," and it is not enough to "simply create a factual dispute as to the issue of pretext." *Id.* "A plaintiff may show pretext, among other ways, by showing that an employer (1) failed to follow its own policies, [or] (2) treated similarly-situated employees in a disparate manner . . . ." *E.E.O.C. Prod. Fabricators, Inc.*, 763 F.3d 963, 970 (8th Cir. 2014) (alteration in original) (quoting *Lake v. Yellow Transp., Inc.*, 596 F.3d 871, 874 (8th Cir. 2010)). The Court evaluates only "'whether the employer gave an honest explanation of its behavior,' not whether its action was wise, fair, or correct." *McKay v. U.S. Dep't of Transp.*, 340 F.3 695, 700 (8th Cir. 2003) (quoting *Harvey v. Anheuser-Busch, Inc.*, 38 F.3d 968, 973 (8th Cir. 1994)); *see Wilking*, 153 F.3d at 873 (courts "must keep in mind that '[f]ederal courts do not sit as a super-personnel department that reexamines an entity's business decisions'") (quoting *Harvey*, 38 F.3d at 973)).

Because Bohner fails to apply the *McDonnell Douglas* standard and instead focuses on demonstrating that Bohner was "qualified" under the ADA, he neglects to offer any evidence of pretext. *See* Doc. [35] at 6 ("The only element Bohner must actually prove that Union Pacific argues he cannot is that he is qualified to perform his job's essential functions."). In failing to adduce evidence demonstrating pretext—or even arguing the issue of pretext—Bohner concedes

9

that there was no discriminatory intent.[7] *See Krehbiel v. Union Pac. R.R. Co.*, No. 19-2002-JAR, 2020 WL 5503363, at *11 (D. Kan. Sept. 11, 2020) (by failing to argue pretext in response to defendant's proffered legitimate, non-discriminatory reason, plaintiff conceded that there was no discriminatory intent). Accordingly, even assuming Bohner is a qualified individual—which Union Pacific disputes—his disability discrimination claim (Count I) still fails because he does not offer evidence that Union Pacific's stated non-discriminatory reason was pretextual.

## II.     Impermissible Medical Examination

The ADA "generally prohibits employers from requiring current employees to undergo medical examinations or inquiries unless the employer can demonstrate they are 'job-related and consistent with business necessity.'" *Hustvet v. Allina Health Sys.*, 910 F.3d 399, 406 (8th Cir. 2018) (quoting 42 U.S.C. § 12112(d)(4)). "Courts will readily find a business necessity if an employer can demonstrate . . . a medical examination or inquiry is necessary to determine . . . whether the employee can perform job-related duties when the employer can identify legitimate, non-discriminatory reasons to doubt the employee's capacity to perform his or her duties." *Thomas v. Corwin*, 483 F.3d 516, 527 (8th Cir. 2007) (internal quotation omitted). "The ADA permits employers 'to use reasonable means to ascertain the cause of troubling behavior without exposing themselves to ADA claims.'" *Owen*, 2020 WL 6684504, at *8 (quoting *Cody v. CIGNA Healthcare of St. Louis, Inc.*, 139 F.3d 595, 599 (8th Cir. 1998)).

Union Pacific argues that because Bohner was referred to an FFD evaluation for the purpose of ensuring that he could safely perform his essential job functions, the evaluation was "job-related." *See* Doc. [30] at 15-16; *Thomas*, 483 F.3d at 527. And because the referral was in response to multiple supervisors' concerns about Bohner's capacity to complete those functions—including "walking, stepping, and climbing," Doc. [29-10] ¶ 17—Union Pacific further argues that it had a legitimate reason to doubt Bohner's ability to perform, notwithstanding Bohner's objections to the supervisors' observations.

In his response, Bohner clarifies that his impermissible medical examination claim "does not regard whether Union Pacific had a right to obtain his medical records." Doc. [35] at 13. Rather, Bohner states, it is based on the allegation that Union Pacific forced him to pay for an

---

[7] It is not the job of the Court to find evidence in the record to oppose summary judgment. "Judges are not like pigs, hunting for truffles buried in [the record]." *Gross v. Town of Cicero*, 619 F.3d 697, 702 (7th Cir. 2010) (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)).

10

examination that it required him to undergo—namely, the Exercise Tolerance Test. *Id.* at 13-14 ("[I]t concerns Union Pacific forcing him to pay for an examination it required him to undergo."). Bohner asserts that the ADA "prohibits employers from subjecting employees to examinations for which it makes them pay." *Id.* at 14. But Plaintiff never made that claim in relation to Count III of his Complaint.[8] *See* Doc. [1] ¶ 35 (alleging, in full, that "Union Pacific discriminated against Bohner on the basis of disability by making inquiry into Bohner's medical records, in violation of 42 U.S.C. § 12112(d)(4)").

In opposing the Motion to Dismiss, Bohner characterized his own claim as Union Pacific "unlawfully subject[ing] him to medical examinations and with[holding] him from service despite him passing those examinations." Doc. [9] at 7. This Court construed the claim similarly in its Order on the Motion to Dismiss. *See* Doc. [25] at 7 ("Plaintiff alleged that Defendant required him to undergo medical examinations because a supervisor observed him to be out of breath on one occasion."). Bohner cannot now, for the first time, argue that his impermissible medical claim is based on Union Pacific forcing him to pay for the examination. *See Williams v. Lewis*, 2018 WL 3242019, at *6 (E.D. Mo. July 18, 2018) ("[T]he Federal Rules do[] not afford a plaintiff an opportunity to raise new claims at the summary judgment stage." (citing *Flaco v. Farmers Ins. Grp.*, 795 F.3d 864, 868 n.4 (8th Cir. 2015))); *Nettle v. Cent. Okla. Am. Indian Health Council, Inc.*, 334 F. App'x 914, 928 (10th Cir. 2009) (a plaintiff "may not amend her complaint through allegation made in response to a motion for summary judgment" (quoting *Griffin v. Potter*, 356 F.3d 824, 830 (7th Cir. 2004))).

Even if Bohner had brought the claim properly, it would still fail because he offers no relevant case law suggesting it is unlawful to require an employee to pay for a medical examination.[9] *See* Doc. [35] at 14. Meanwhile, Union Pacific offers persuasive—albeit not binding—case law to the contrary. *See Blackwell v. SecTek, Inc.*, 61 F. Supp. 3d 149, 159 (D.D.C. 2014) (the ADA "does not specify who must pay for those inquiries"); *O'Neal v. City of New Albany*, 293 F.3d 998, 1010 n.2 (7th Cir. 2002) (requiring post-offer applicant to pay $1,500

---

[8] Under Count I, Bohner states Union Pacific engaged in disability discrimination in violation of the ADA when it "removed him from service, forced him to pay for testing, and withheld him from service." Doc. [1] ¶ 22. He does not make that claim under Count III, nor does he direct the Court to that allegation in opposing summary judgment as to the impermissible medical inquiry.

[9] Bohner cited only one authority in support of this claim. *See EEOC v. BNSF Ry. Co.*, 902 F.3d 916, 925 (9th Cir. 2018). That case is both non-binding and factually distinguishable from the instant case.

11

for medical examination); *Porter v. Alumoweld Co., Inc.*, 125 F.3d 243, 245-47 (4th Cir. 1997) (affirming grant of summary judgment on ADA discriminatory discharge claim based on employee's unwillingness to undergo requested FFD examination at employee's own expense).

Regardless, Bohner concedes the merits of the claim he properly pled—that Union Pacific unlawfully made an inquiry into his medical records—and therefore his Count III fails.

Accordingly,

**IT IS HEREBY ORDERED** that Union Pacific's Motion for Summary Judgment (Doc. [28]) is **GRANTED.**

**IT IS FURTHER ORDERED** that the Motion to Exclude Portions of Testimony by Plaintiff's Expert Witness (Doc [31]) is **DENIED as moot**.

An appropriate Judgment will accompany this Memorandum and Order.

Dated this 3rd day of August, 2021.

*Sarah E. Pitlyk*

SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE